**In re PITTSBURGH RYS. CO.**
No. 20225.

United States District Court
W. D. Pennsylvania.
Nov. 26, 1948.

See also 76 F.Supp. 725.

J. Henry O'Neill and Wells Fay, both of Pittsburgh, Pa., for trustees.

John M. Marshall, of Pittsburgh, Pa., for City of Pittsburgh.

George Zolotar, of New York City, for Securities and Exchange Commission.

McVICAR, District Judge.

The Trustees of the Pittsburgh Railways Company and the Pittsburgh Motor Coach Company, May 4, 1948, presented their petition to this Court wherein they prayed, inter alia, that the Court make an order:

"Authorizing the Trustees of Pittsburgh Motor Coach Company, subsidiary, to purchase thirty (30) new 27-passenger through

route buses at a presently estimated price of approximately \$8,393 per bus or a presently estimated total price of approximately \$251,800, but in no event at a total price in excess of approximately \$264,400 and to purchase forty-four (44) new 27-passenger buses for use on feeder and shuttle routes at a presently estimated price of approximately \$8,361 per bus or a presently estimated total price of approximately \$367,900, but in no event at a total price in excess of approximately \$386,300, under customary form or forms of conditional sale or bailment lease contract or contracts * * *" etc.

The petition was referred to Watson B. Adair, Esq., as Special Master for hearing and report.

November 1, 1948, the Special Master filed his report wherein he made the following conclusions:

"1. That it is necessary and in the best interest of the estates of the debtor, Pittsburgh Railways Company, and the subsidiary, Pittsburgh Motor Coach Company, that the Trustees of the latter purchase at this time sixty-eight (68) 27-passenger motor buses which may include some which shall have been changed to 25-passenger motor buses by the omission of two seats, at a presently estimated price of approximately \$8813 each or a total price of not exceeding approximately \$599,300, and purchase at this time miscellaneous equipment for said buses at a presently estimated total price of approximately \$2400.

"2. That said purchases should be made for cash.

"3. That the Trustees of Pittsburgh Railways Company should be authorized to loan from its estate to the trustees of Pittsburgh Motor Coach Company such amounts and at such times as may be required to enable the Trustees of the subsidiary to pay for the motor buses and miscellaneous equipment so purchased.

"4. That it is necessary and in the best interest of the said debtor and subsidiary that the trustees of the latter purchase approximately six, not more than eight, motor buses and miscellaneous equipment therefor, in addition to said sixty-eight motor buses, and that the number, price and description of the such additional motor buses and the price of such equipment be determined on the present petition at a later time."

He also made eight recommendations.

November 15, 1948, the Securities and Exchange Commission and the City of Pittsburgh filed objections and exceptions to the Special Master's report.

The petition, the report, and the objections and exceptions thereto, were heard by the Court.

All the parties agree that there is a compelling need for a greater bus service, the principal issue being the type of bus which should be furnished. The Securities and Exchange Commission and the City of Pittsburgh contend that larger buses should be purchased than that specified in the petition.

The Special Master heard the evidence of several witnesses, employees of the petitioners and also that of N. A. Lougee and Company, engineers employed in the matter now before the Court of proposed change from trolley to bus service.

The Special Master reached the conclusions specified above for the reasons specified in his report, among which was the urgent need for prompt improvement in the bus service and the matter of economy in using the type of buses specified in the petition. While different inferences can be drawn from the evidence, I am of the opinion that the evidence justifies and supports the conclusions and recommendations made by the Special Master for the reasons set forth by him in his report.

I conclude that the Master's findings of fact should be accepted, that the report of the Special Master should be adopted and that the objections and exceptions of the Securities and Exchange Commission and the City of Pittsburgh should be dismissed.

Let an order be prepared and submitted in accordance with this opinion and the report of the Special Master.